Estate of Olive Hume Oliver, Deceased, William Hume Oliver and Harbaugh Miller, Executors v. Commissioner.
Estate of Oliver v. Commissioner
Docket No. 1132.
United States Tax Court
1944 Tax Ct. Memo LEXIS 273; 3 T.C.M. (CCH) 408; T.C.M. (RIA) 44138; April 28, 1944
*273 S. Leo Ruslander, Esq., First Nat. Bank Bldg., Pittsburgh, Pa., for the petitioners. J. Harrison Miller, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in estate tax in the amount of $13,900.52. The petitioner alleges that the respondent erred in determining the amount of the estate tax liability (1) by adding to the net estate reported the difference between the face value of a promissory note held by the estate in the amount of $1,550 and the amount collected thereon, $110.91, or $1,439.09; (2) by adding to the net estate $7,350.90 in respect of the value of certain participation certificates in a mortgage pool; and (3) by adding to the net estate the value of a reciprocal trust created by the decedent's son for the benefit of the decedent in the amount of $25,389.06. Findings of Fact The petitioners are the executors of the estate of Olive Hume Oliver, who died a resident of Sewickley, Pa., on October 25, 1940. The estate tax return was filed by the petitioners with the collector of internal revenue at Pittsburgh. The executors elected to value the estate as of one year after the *274 date of death. The estate was the owner of a collateral judgment note dated December 16, 1938, in the face amount of $1,550. The executors realized $110.91 from the sale of the collateral on said note. The maker of the note, Joseph B. Buzard, had acted as decedent's bookkeeper for five years prior to her death at $30 per month. He was the cashier of the Sewickley Valley Trust Co. The note was given to the decedent in connection with certain securities transactions entered into jointly by the decedent and Buzard - the decedent furnishing the capital. It was the understanding between them that the note would be collectible only if there were profits arising from the securities transactions. Such transactions resulted in a loss. The decedent intimated to Buzard that the promissory note would be cancelled. Buzard rendered valuable services to the decedent over a period of five years prior to her death. He also rendered valuable accounting services to the executors of the estate after the death of the decedent. For such services he was paid by the executors $500 or $600. No demand for payment of the note was ever made upon Buzard by the executors. They cancelled the note. In the estate *275 tax return the only amount included for the note was $110.91 which was realized from the sale of certain collateral given by Buzard on the note. The respondent has valued the note for estate tax purposes at $1,550. The value of the note for estate tax purposes was $110.91. The estate was the owner of certificates of participation in a mortgage pool of a face amount, at the valuation date, of $147,018. There had been collected upon the principal of the notes up to the valuation date $58,807.20, or 40 percent thereof. The payments subsequent to the valuation date (17 percent of face value) were: Date
Percent
November 15, 1941
3
May 15, 1942
3
November 14, 1942
2
May 15, 1943
4
November 15, 1943
5
There was no established market for these certificates as of the valuation date. From the best information that the executors could obtain approximately 70 percent of the face value of the certificates would ultimately be collected. The unpaid balance on the valuation date, $88,210.80, was returned for estate tax purposes at $44,105.40. The fair market value of the unpaid portion of the participation certificates on the valuation date was $44,105.40. On August 20, 1935, *276 the decedent irrevocably transferred to the Union Trust Co., of Pittsburgh, certain securities of an approximate value of $60,000 for the benefit of her two children, William Hume Oliver and Martha Jane Oliver. The net income from the trust fund was to be paid share and share alike to the decedent's two children with remainders over. Concurrently with the creation of the above trust by the decedent and on the same date, William Hume Oliver irrevocably transferred to the Union Trust Co. certain securities of an approximate value of $24,000. The net income of this trust was to be paid to the decedent for life with remainders over to her children. The trust instrument provided in part as follows: "FOURTH: So long as the Donor's mother, Olive Hume Oliver, or sister, Martha Jane Oliver, live, should either, then being entitled to the income from said trust fund, become in urgent need and require all or part of said fund for her maintenance the Trustee shall, within its discretion, pay to either the said Olive Hume Oliver or Martha Jane Oliver such part or all of the principal of said fund as shall be necessary for her proper maintenance." The value of the corpus of the trust created *277 by William Hume Oliver for the benefit of the decedent was $25,389.06 on October 25, 1941, the valuation date. In the estate tax return filed no amount representing the value of the corpus of the trust created by William Hume Oliver was included in the net estate. In the determination of the deficiency the respondent has added to the net estate $25,389.06 representing the value of the assets of such trust. Opinion The first question presented is the value for estate tax purposes of the promissory note of Joseph B. Buzard. The executors considered that the note had no value beyond the $110.91 which they realized from the sale of collateral that had been given to the decedent by Buzard. They carefully examined the circumstances under which the note was given and were of the opinion that it was never the intention of the decedent, in the circumstances of the case, to press Buzard for payment. They also reached the conclusion that Buzard was judgment proof and had no property from which the note could be collected. From an examination of the entire record we reach the conclusion that the note was valueless for estate tax purposes beyond the $110.91 realized from the sale of the collateral. *278 The second issue relates to the value of certain certificates of participation in a mortgage pool owned by the decedent. This pool was being handled at the date of the death of the decedent by the Commonwealth Trust Co. The total amount of the principal realized on the certificates owned at the valuation date was $58,807.20. It was problematical what additional amounts would be collected. From the best information which could be obtained (there was no market for the certificates) the executors determined that about 70 percent of the face value would ultimately be realized. They accordingly valued the unpaid balance of $88,210.80 on the valuation date at $44,105.40. The respondent obtained information that at the present time the estimate of the Commonwealth Trust Co. as to the ultimate realization on the notes is 75 percent, rather than 70 percent. The respondent therefore increased the valuation of the unpaid portion of the notes at the valuation date to $51,456.30. We are satisfied, however, from all of the evidence that the fair market value of the unpaid portion of the certificates at the valuation date was not in excess of $44,105.40 and have accordingly found that to be their *279 fair value. The final issue, is whether there should be included in the net estate of the decedent any amount in respect of the assets of the reciprocal trust created by her son, William Hume Oliver, on August 20, 1935, for the benefit of decedent for life with remainders over to her children. William Hume Oliver created this trust on the same date that the decedent created a trust for the benefit of William Hume Oliver and his sister, share and share alike. The value of the assets transferred to the trustee by the decedent was approximately $60,000. The value of the assets placed in the trust by William Hume Oliver for the benefit of the decedent was approximately $24,000. The respondent contends, and counsel for the petitioners admits, that these were reciprocal or cross trusts. Among the assets included in the trust created by the decedent were 1,000 shares People Natural Gas Co. (Pa.) five percent cumulative preferred stock ( $50). Among the assets placed in the trust by William Hume Oliver for the benefit of the decedent were 375 shares of the same stock. Counsel for the petitioners conceded at the hearing that "this Court has in several decisions indicated very strongly - if *280 not positively - that in a case like this the value of the assets of the cross trust should go into the gross estate of the testator or testatrix." See Estate of Frederick S. Fish, 45 B.T.A. 120. Cf. Purdon Smith Whiteley, 42 B.T.A. 316. The petitioners place chief reliance upon Commissioner v. Dravo, et al. (C.C.A., 3rd Cir.), 119 Fed. (2d) 97; affirming 40 B.T.A. 309. The facts in that case are substantially different from those which obtain in the instant proceeding. One point of difference, which is sufficient for our present purpose, is that the trust, or trusts, which were considered in that case were created long prior to March 3, 1931, the effective date of the amendment to section 302 (c) of the Revenue Act of 1926. The trusts here were created in 1935 when section 302 (c) of the 1926 Act, as amended, included in the gross estate of a decedent the corpus of a trust which he had created, retaining the income for life. The trust created by William Hume Oliver was a reciprocal trust. The decedent may properly be regarded as the grantor. See Lehman v. Commissioner (C.C.A., 2nd Cir.), 109 Fed. (2d) 99; *281 Estate of Frederick S. Fish, supra.Since the decedent was the life beneficiary of the trust, its value is to be included in the gross estate under section 302 (c) of the Revenue Act of 1926, as amended. The petitioners contend that if any part of the trust created by William Hume Oliver is to be included in the net estate of the decedent, that value should not be in excess of $9,882.73, the alleged value of the decedent's life estate in such trust assets. We see no merit in this contention. As a wholly reciprocal trust the entire value of the corpus of the trust is includable in the net estate of the decedent. Estate of Frederick S. Fish, supra.The stipulated value of such corpus on the valuation date is $25,389.06. The respondent's contentions upon this issue are sustained. Decision will be entered under Rule 50.